Good morning, may it please the court. I represent Col. Derek Harvey and we're asking the court to reverse the district court and remand the case for a trial on Col. Harvey's defamation and false light claims. I'm going to be addressing the dismissal of the case under Rule 12b-6 and I just want to begin by with what I would commend the court is the correct lens to be looking at this case on a 12b-6 motion. The district court in a number of places looked at the case through the lens of a reasonable Republican or what a reasonable Republican would would view as being odious or offensive and I would submit to the court that the the leading case that we cite is Washington Post versus Chaloner. It's a 1919 decision and what the Supreme Court of the United States said in Chaloner very clearly was that in order to determine whether a statement is average reader or the reader of the article would understand it. In this case we have alleged in paragraph 2 of the amended complaint five statements that Col. Harvey contends contain defamatory material. Now in the in the brief of appellant we amalgamate them as statements 1 and 4, 2 and 3, and 5 really goes along with with 1 and 4. So the this is a false attribute. So are these five statements the difference between the original complaint and the amended complaint? Well Judge Thacker they're the same statements because they come from the same article. The question is... Okay so what's the difference significantly between the original complaint and the amended complaint? Sure the the the significant differences as we point out in the the the brief and in the redline version of the amended complaint. We filed a redline version of the amended complaint in which we clearly pointed out what was being added, what was being deleted, what was being clarified and this is on page five of the brief. We add material we add allegations to paragraph 3 of the of the amended complaint, paragraph 5, paragraph 6, and paragraph 38 of the amended complaint. The purpose of these additions the reason that they're material material additions and even the the district court went to some lengths to try to distinguish the cases that we cited the reason that they're material is because this is a false attribution case and in the amended complaint we make that clear. We make it clear that CNN published a a an online article and went on a broadcast and they said that Colonel Harvey said certain things and that's what makes this a false attribution case. They said that Colonel Harvey said that the timing of this trip to Vienna and the timing of the meeting with the corrupt Ukrainian prosecutor by the name of Shokin was all done deliberately. It was all done as part of an effort to deceive members of Congress and the reason that that's defamatory as the Supreme Court of the United States pointed out of the Mason case the leading cases Mason versus the New Yorker is because Colonel Harvey never made those statements. He never made those statements to have to break them down. Lev Parnas CNN reported that Lev Parnas said that Colonel Harvey said that they went to Vienna. That never happened. They never went to Vienna. We have to first determine whether Colonel Harvey is a public official or figure or not in order to determine what lens we view these statements through. Judge Thacker not for purposes of determining whether the statements are defamatory. Your point is well taken on the question of whether or not Colonel Harvey is required to allege actual malice and I'm going to presume for purposes of my argument today that he is a public figure that the court is going to not going to to address the New York Times issue rather that's a matter for the Supreme Court of the United States and I would submit to your honor that even under the assuming the statements are defamatory and Colonel Harvey is a public figure as you've conceded what's the evidence of actual malice. There are I can point the court to paragraph 41 of the amended complaint and I would commend 41A, 41D and 41I of the amended complaint. When the court looks at those paragraphs there are three sets of facts that are alleged that give rise to a plausible inference of actual malice at this stage of the proceeding and the first plausible allegation of actual malice is the reliance upon an unreliable source. The amended complaint goes to great lengths to show that CNN knew that Lev Parnas was a totally incredible source. We point out that even CNN anchor Jake Tapper pointed out on air saying that Lev Parnas was totally incredible. Before they published the article they themselves the same author Vicki Ward referred to their source as a radioactive wolf in sheep's clothing. So if they knew that their source was totally unreliable and they published statements the published the statements of that source this court has held in the Wells case, Wells versus Liddy, that that is enough to survive a summary judgment motion on the question of actual malice. The Supreme Court of the United States in the St. Anant case which is really the the leading case in these issues has said that that is one of the essential types of actual malice the reliance on a totally unreliable source and I would also point out this when the court listens to the broadcast the Andrew the Chris Cuomo primetime broadcast even Chris Cuomo refers to Lev Parnas as quote the shady guy. So CNN clearly knew that their source was totally unreliable that he was a fraudster a hustler a radioactive wolf in sheep's clothing and yet they relied on his statements and his statements were as we allege in the amended complaint totally fabricated and that's another way the the St. Amant court the St. Anant court has said that you can allege actual malice is by showing that the events never occurred that they were completely fabricated and we allege that in paragraph 41 I of the amended complaint and the last the last aspect of the actual malice allegations are the the rule of law that was announced by the Supreme Court of the Connaughton case Hart Hank versus Connaughton and that is where the defendant fails to interview a known source who's readily available. In this case there couldn't be a clearer example of CNN deliberately evading the truth is what the Supreme Court of the United States has said in Connaughton there couldn't be a clearer example than this case. So Victor Shoken who is the corrupt Ukrainian prosecutor who CNN and Parnas say that my client Colonel Harvey and his superior visited in Vienna in December of 2018 that particular corrupt Ukrainian prosecutor was available and he for for reasons that that are completely unexplained CNN failed to interview him. He was interviewed by the Washington Post and he denied that he ever knew Parnas ever met him and he was later interviewed as we allege in the amended complaint he was later interviewed by One America Network. I just want to go back to something you said when you when you first stood up something about reasonable Republicans were you saying that the district court viewed it through the lens of a viewed this case through the lens of a reasonable Republican or I wasn't understanding where you were going with that. The the the district court uh viewed the allegations in this case the effect of the allegations in this case on what their effect would be on uh essentially a reasonable reasonable Republican. He he there's a reference in his opinion to uh all that was happening in this case that there was nothing wrong there was no there was no defamatory uh um uh element to these statements because even the Republicans were saying that there was nothing wrong with going with interviewing uh Ukrainians about uh Joe Biden and his son. So the court was saying there's nothing defamatory about that because even the Republicans were saying there's nothing wrong with it but that's not what they said about Colonel Harvey. They didn't the the CNN just didn't didn't just say well Colonel Harvey accompanied uh uh Congressman Nunes to interview a a uh Ukrainian prosecutor. That's not what they said. They said that Colonel Harvey told Lev Parnas that they they uh essentially uh hid the reason that they went over there and and hid the reason that they interviewed this prosecutor. And I just want to say that they never went to Vienna, they never interviewed a prosecutor, and they never hid anything from anybody. And so every aspect of this CNN article is false. It's false upon on false. Um I see my time is up. If there's any other questions I'd be happy to to answer them. Thank you, Your Honor. Thank you, Mr. Biss. Mr. Lipper. Thank you. Excuse me. Thank you, Chief Judge Gregory, and may it please the Court. I'm here on behalf of Appellant Joseph Meadows who is appealing the sanctions award against him and whereas Mr. Biss was addressing simply the the merits of the first amended complaint and whether it should have been dismissed, the question in terms of the sanctions award is different. Now the question... Is it only the sanctions award against Mr. Meadows that's being I represent only Mr. Meadows, so I believe my co-appellant does address sanctions briefly in his brief, but I as a lawyer am here on behalf of Mr. Meadows only. And I think what what ultimately the the one of the core errors that the district court made was to conflate the merits question, did the first amended complaint make enough changes to enable it to survive a motion to dismiss, on the one hand, with the sanctions question, which is really was it bad faith or vexatious? You said it was, right? I mean I totally understand you don't want district courts running around inviting amendment amended complaints and then saying, ah, this one's not good enough sanctions. But I thought the district court clearly understood that, that he found bad faith, he found that this was vexatious. But he didn't, I mean he he said that there was bad faith and that it was vexatious, but there was no real analysis or discussion of it. You know, only one of the cases he cited of the even involved an amended complaint, which was a case from a bankruptcy court in the northern district of Florida from the early 1990s, and although the facts in that case are not elaborate, it looks like that amended complaint was close to identical. And here the were changes to the first amended complaint. He said that were presumably designed to address the concerns that he had addressed in his prior order. Now, he said they don't suffice to address his concerns, but again, there is nothing further that specifically identifies any bad faith or vexatiousness, and there's no reason to think that. If everything in the record suggests that Meadows was doing his best to fulfill his ethical obligations to his client, because if he had not, and Meadows has not been involved in any of their cases involving Congressman Nunes, he has not been involved in any cases with my co-appellant's counsel before, you know, and if he had refused to allow the complaint to be filed, or if he refused to put his name on the complaint, which would have meant it could be amended complaint, which meant it couldn't have been filed, he would have been violating his own ethical obligation to his client, which includes a duty of loyalty and a duty of zealous advocacy, because there was important information that was contained in the first amended complaint that was important. You know, for instance, the district court had, in his original order, said that Harvey could not show that his reputation suffered because he was working for a leading Republican, and the Republicans were defending the efforts in Ukraine to solicit information about Biden, but in the first amended complaint, there was specific information showing that Harvey was situated differently than, you know, the average Republican elected official, that he had a history as an intelligence officer with a security clearance, and that in his professional circles, which goes beyond his job as a congressional staffer, these types of allegations would harm him. They could affect his future employment, and they could even lead to his security clearance being revoked. Can you speak to the — don't you have an argument about the lack of process, or meaningful process, at least, before sanctions were imposed? Yes. Basically via footnote? Yes, we do. And I think that also goes to — even if it were theoretically possible to find bad faith, there was no opportunity for Meadows to be heard, either in writing or orally, much less present evidence, to explain why he exercised the legal judgment that he did, you know, and why he, you know, didn't order his name be taken off the first amended complaint. There were violations of the local rules and the federal rules. Federal Rule 7 requires an actual motion be filed, not just a footnote to the very last sentence of a supporting memorandum for a different motion. There is a local rule, 105.1, that requires that every motion be supported by a memorandum, and there was no motion for sanctions, let alone a memorandum in support. Counsel, can I ask you about that? Yes. The district court can impose inherent sanctions sua sponte, right, without a request from a party at all. So just in this case, does it really matter whether the formalities of whether the request was properly made? Didn't the district court also rely on inherent authority? I think it does, and I'll say for two reasons. So first of all, the district court did not view this. You can look at it. The district court's own words suggested he did not view this as a sua sponte exercise of inherent authority. If you look at page 318 of the Joint Appendix, the district court says CNN requested that it should be awarded fees, costs, and expenses pursuant to Section 1927 and this and proceeded to analyze it as such. So the district court was treating this as an invited request, not a sua sponte exercise. But the second point, and I think this is more fundamental, is that Rule 7 and local rule, you know, local rule 105.1 and the local rule 105.8 requiring a response before sanctions are imposed are not mere formalities. They are important protections and provide important guidance and process to the And I think it's an important, you know, and a lot of the briefing, you know, including CNN's brief in this case, was sort of suggesting that, well, Meadows could or should have said more earlier in response to the footnote. But first of all, Meadows is familiar with the rules and is entitled to rely on them. But second, if Meadows had, based on this sort of Rorschach test of a quasi-maybe motion for sanctions, decided he needs to sort of immediately sort of pull out all the stops and hire his own counsel and disclose client confidences or work product, that is undermining not only his duty of loyalty to his client, but his duty of confidentiality. And he would have had to have been doing that while the underlying First Amendment complaint was still before the district court. And that would have been extremely damaging to his client. And I think Meadows, you know, I think, took his own ethical obligations to his client seriously. And so I think an attorney looking at this... Can I just ask you a question? Because I don't, a genuine question, I don't know. Is that customary in a case like this, that when someone is seeking sanctions like these, covering costs for an appeal, or I'm sorry, for the response to the amended complaint, that the lawyer and the client would split and the lawyer would hire his own counsel? Is that a – is that usually how that plays out? Well, I think it depends. But I think it certainly has happened. And so, for instance, but I think one of the things that was missing here, and I think this explains it, is very often you will get an order to show cause, right? And so if, for instance, the district court had saw the footnote, you know, agreed with it or preliminarily agreed with it, dismissed the First Amendment complaint, he could have then ordered counsel to show cause why they should not be sanctioned. And at that point, perhaps, you know, he might have, especially if he had, you know, if he thought there were otherwise confidential information that would have helped him. But I think it's that underlying notice that lays out the rules of the road. And here Meadows was... Do you think here someone would have, the lawyer would have hired his own counsel? I think it depends. I mean, I think... It's proportionate. Excuse me? That just seems sort of like a lot. Well, but I think, you know, sanctions against a lawyer are professionally devastating. I mean, I, without disclosing anything confidential, if you look, the sanctions award against Meadows, or against all counsel and parties jointly and severally, was for $21,000. Meadows hired counsel to file a motion for reconsideration and has hired counsel for an appeal. And he did so because, as courts have recognized, the professional consequences for sanctions, they're stigmatizing, they're embarrassing, they can follow the lawyer around, they have to be disclosed on insurance applications, on other court admissions. You know, it's a real, it's a real, you know, badge of shame, for lack of a better word. And it's because those consequences transcend the cost of the sanctions or the particular case at issue, they are, I think, taken very seriously when a sanctions request is made. And allowing them in that circumstances would have a significant chilling effect on future attorneys who would, you know, do not want to risk having this happen to them. I see my time has expired. The Court has no questions. You wanted to finish your thought there? You can. Sure. I want to make sure I'm keeping my rebuttal time, but — No, you don't have to take it away from me. I thought you were in the middle of a thought. The only thing I'd say is, you know, that a lawyer looking, another lawyer looking at this order, both the process and the substance underlying it, would think very hard about representing a client, an unpopular client with a controversial case, and would think doubly hard about filing a First Amendment complaint that sort of ultimately proves, you know, unsatisfactory to the district judge. And that is why, ultimately, I think not only was Meadows forced, you know, not only was Meadows punished for fulfilling his ethical duties to his client, but the decision in this case will chill attorneys from zealously and loyally representing clients in the future. In review of — in reviewing this, do you think we should look at your client — I know it's like a no-brainer, but I know — but I trust you as counsel, you're going to look at it more than just that. Take it for what it's — I'm asking the question of, do you think we should look at your clients in a different light because he was local counsel? I don't think it's merely because he was local counsel. I think — although, I think it's one factor. Ultimately, when there's sanctions premised on bad faith, there has to be an individualized inquiry, right? And so not everyone whose name is on the — this is not like Rule 11, where it's if your name is on the offending paper, you are on the hook. And so I think you have to look at his circumstances individually. It might include — you know, that — some of the factors to consider might include — Which is what the motion to show cause would have illuminated the district court about. I think so, right? In order to show cause would have — There might be a distinction between Mr. Meadows and Mr. Biss. Right. There might be a distinction, you know, given his secondary role. There might be a distinction given his lack of — you know, there's no indication that Meadows has some sort of ideological axe to grind here, you know, that he was doing anything other than trying to help his client. And there may have been specific circumstances underlying the filing of the amended complaint or why Meadows, you know, felt that he couldn't veto its filing. All of that would be taken into account in the individualized inquiry. So I would say the fact that he had a secondary role as counsel, it's not — it's not a dispositive, but it's certainly relevant to the individualized inquiry, none of which happened in this case. Thank you, Mr. Lipper. Mr. Henton. Thank you, Chief Judge Gregory. And good afternoon, Your Honors, and may it please the Court. I am Thomas Hentoff with Williams & Connolly. I represent the Defendant Appellant Cable News Network. I'd like to start by addressing the appeal of the district court's Rule 12b6 dismissal, and I'd like to focus my discussion on two of the grounds relied on by the district court. First, the statements that Colonel Harvey — sorry, the statements that are about Colonel Harvey that he challenges as a matter of law do not rise to the level of defamation. And one point that I would like to make is Mr. Biss, in characterizing the two CNN reports, said — they said that Colonel Harvey deceived Congress. That is Mr. Biss's assertion. There is nothing in either the CNN article or the transcript of the discussion in which they say Colonel Harvey deceived Congress. Quite to the contrary, they pointed out that Colonel Harvey had told Mr. Parnas that his boss, Congressman Nunes, had decided to comply with disclosure rules by taking the trip before there was a requirement to disclose them to the incoming Democratic majority. Mr. Biss also said that CNN anchors said that Mr. Parnas was incredible and unreliable, and so that they knew he was unreliable, and therefore, that's evidence of actual malice. What's your response to that? Yes, Judge Thacker, and that was the second point that I wanted to address, is the failure to plausibly allege actual malice. So I think that Mr. Biss left out from his discussion and from his brief two really important facts that are evident from the 12b6 record that completely negate any plausible allegation of actual malice. The first is — and by the way, I'd like to make a correction. Mr. Biss said that Jake Tapper made a statement that indicated that he didn't believe that Lev Parnas was believable. The record shows that that statement was made several weeks after the two challenged reports. That's not relevant to or probative of the state of mind of Vicki Ward several weeks earlier when the reports were published. So the two things that Mr. Biss left out, the first is that the source that CNN relied on was not Lev Parnas. CNN relied on Joseph Bondi, the attorney who was representing Lev Parnas in the criminal case. And this attorney was willing to go on the record by name to tell the world that his client, who had been subpoenaed for documents and testimony by Congress in the impeachment inquiry, was willing to testify under oath about what he talked about, about the efforts to gather information in Ukraine. And there's nothing in Colonel Harvey's two briefs or Mr. Biss's argument today that would say that CNN had any basis to believe that this attorney was going to trash his own reputation by making that promise about what was going to happen. So that's an important thing that's missing. It also distinguishes the cases that Mr. Biss relies on. For instance, Wells v. Liddy, which is a Fourth Circuit case, that's an extreme case. The facts of it are very interesting. The defendant was G. Gordon Liddy of Watergate fame, and he testified that he actually didn't believe the source. And also there was evidence in the record that the source was that totally could not be relied on. But here, by contrast, CNN was relying upon the attorney who was representing Mr. Parnas. The second thing that Mr. Biss leaves out, and I thought it was striking that he said that CNN engaged in a purposeful avoidance of the truth, which is language from the Hart-Hanks case. And yet, the face of the article shows, and the complaint does not in any respect dispute, that CNN, after getting this information from Mr. Bondi, went directly to Congressman Nunes. And over the course of two weeks, they tried to speak to him twice. And they actually reached Col. Harvey, who refused to speak with them. And the face of the article also shows they reached out to Mr. Shokin. So in this case, Col. Harvey had, and his boss, Devin Nunes, had an opportunity before publication. And in fact, with Congressman Nunes, it was two weeks, they had an opportunity to say, this is wrong. You should not publish these statements. They're false. They forwent the opportunity that CNN gave them and gave CNN no indication that they were going to say that was false. And then CNN publishes it. Again, that's the opposite of the purposeful avoidance of the truth. They went to the CNN, went to the subjects, asked for comment. Subjects refused to comment. The story is published. And then they sue for defamation. That is completely a whipsaw. It is the opposite of what this Court talked about in Fairfax v. CBS, which was a case in which it affirmed the dismissal on 12b-6 of, at the time, Lieutenant Governor of Virginia, on the ground that the allegations of actual malice failed to satisfy Iqbal Twombly. In that case, this Court forcefully talked about, citing Times v. Sullivan and its progeny, the importance that when news organizations are reporting on government leaders and public officials, that they have protection, that they can't self-censor and be chilled, that if they make a mistake and if there is an alleged falsity, they will have liability. The idea that the important public officials, when they're contacted, will refuse to talk and then turn around and sue, that turns those concerns on their head. I guess I'd finally note on the Your Honors have other questions, that the District Court quite correctly noted that almost all of these reports were about Devin Nunes' plans, Devin Nunes' decisions, what Devin Nunes had said on one occasion and what he did on another occasion. And, in fact, it was Devin Nunes' publication. What little is said about Colonel Harvey is simply not defamatory. Can I ask just one question about that on the sequencing statement you were talking about before that? I want to make sure I get this right, that Harvey told Parnas that Nunes had done the scheduling to avoid disclosure to Congress. What I understand, Mr. Harvey, to be arguing now at least, is that that was defamatory as to him because it makes him look like a big, like, blabbermouth who's revealing all this information to this unreliable guy, Parnas, about his boss. Does that work? Judge Harris, I'm understanding Mr. Biss to be making a totally opposite argument. Oh, okay. And I think he's saying this is what he's saying now, this is what this case focuses on. He's saying that the CNN article portrayed Colonel Harvey as a liar, not someone who's a blabbermouth to Mr. Parnas, but as someone who lied to Mr. Parnas about the true reason for the sequencing of the trip. And that is, completely fails to meet the standard for what is a defamatory statement, which under, you know, the law is relatively similar across different states, but in Maryland it is subject the plaintiff to public scorn, hatred, contempt, or ridicule, thereby discouraging others from having a good opinion of them or dealing with them. And I think most significantly, nothing in the four corners of the article that are in the report said that Colonel Harvey was lying. In fact, Judge Harris, you said it made him seem like a blabbermouth. And of course, the Court, this Court, you judges, are the gatekeepers to determine what's a reasonable reading of what the challenge reports say. And in this case, the only reasonable reading is simply that, which is what the district court said. Colonel Harvey provided information to Lev Parnas about the reason for the timing of the trip. Now, does that make his boss look bad? Not really. And again, that's what the district court found. Congressman Nunes complied with the disclosure rules. He didn't violate the disclosure rules. And of course, this is, you know, we live in a world in which the two major parties are divided, they're contentious, and they're doing the work of government on opposite sides of many issues. I don't think anybody would say that when, you know, both sides have investigative powers, that it would be defamatory to say that someone didn't give a heads-up to the other party and say, I know you're working on this hearing, but this is, you know, this is what we got going. It's simply not defamatory to say that somebody failed to do that, especially when the article made clear that Congressman Nunes was complying with the disclosure obligations. So there's nothing here about Colonel Harvey that's defamatory. I can turn to the sanctions question unless Your Honors have any further questions about the 12B6 dismissal. I do want to hear about the sanctions. Well, I guess I'll start with the merits of the sanctions order. The district court – well, first of all, of course, we previously had been talking about a standard of review that was de novo, and now we've moved on to an abuse of discretion standard of review. Judge Bennett was the person who was there, who was reviewing things in real time. When Colonel Harvey filed the amended complaint, Judge Bennett immediately ordered a status conference, a scheduling conference, got everybody on the phone the next day, and he set an expedited briefing schedule where CNN only had seven days to file its motion to dismiss the amended complaint. So what Judge Bennett found was that he had told the plaintiff that he could amend the complaint if he could fix the manifest deficiencies, and then he looked at – anyone can look at the red line that Mr. Biss was talking about and see that there was not even an attempt to fix the manifest deficiencies. And I think the best example that I can give is the failure to do anything of substance to plausibly allege actual malice. The inability to allege actual malice defeats the claim. Did the possibility of sanctions come up in that status conference, or was the first time that came up in the footnote in the motion to dismiss? Yes, Judge Thacker. The first time sanctions came up in the case was in our motion to dismiss the amended complaint. Okay. So then that cannot be the court's inherent authority. You were making that by way of motion, which it seems like Rule 7 would apply to, correct? Well, a couple of things. Number one is, we did suggest that the court – At least it could not be sua sponte, the court's inherent authority, I should say. Well, Your Honor, we did suggest it first, and the judge did respond to it. We complied with Rule 7 because Rule 7 says a motion needs to be made in writing. It was in writing. We had legal argument. It wasn't a footnote, but we did explain why the conduct was in bad faith and was sanctionable. We included in the draft order a request that there be sanctions. And at any rate, that's the answer to that question. But just to finish my thought on the merits, I believe Mr. Biss said that there were changes in this brief, that there were changes to Paragraph 41, and that's the evidence of actual malice. There's essentially nothing has changed. There are a couple of conclusory allegations were added, but there was not even really an attempt. So, in other words, the judge said, if you can cure the deficiencies, file an amended complaint, and if you just look at the actual malice allegations, they're essentially unchanged. It couldn't have changed the result of the judge's ruling. And it's the same with all the other allegations. It's just that the actual malice allegations are so clear because there's so little additional red ink, and what is added is just conclusory, you're not new facts. The concern I have, and I want to give you a chance to address it, is that, I mean, I think this happens not infrequently, that parties, sometimes pro se, sometimes just poorly represented, try, sometimes quite ineptly, to amend a complaint and are unsuccessful. They are unable to address the pleading deficiencies that the district court identified at first. And we obviously don't want a system in which all of those people get sanctioned for failing to amend a complaint to a district court's satisfaction. And what's supposed to separate those cases from this one is the bad faith, but the district court really didn't say much about why he believed there was bad faith here. There wasn't a show-cause hearing, so we can't assume that it was something that happened at the hearing. Mostly he seems to talk about the fact, the district court seems to talk about the fact that the brief came in after close of the hearing, and it was permitted by the rules. I don't really understand why that's such a big deal. So where's the evidence here that I can see on this paper record of bad faith versus inept lawyering? I guess I have to start by not, not, not, I don't want to characterize the lawyering on the other side in the district court. Oh, yeah. I'm sorry. I didn't mean to either. I'm talking about my sort of hypothetical concern that we don't want to be penalizing inept lawyering in general, writ large. I'm not talking about the lawyering here. I guess what I would say is, from the perspective of Judge Bennett, looking at the advocacy, he, he made a judgment that he was not looking at inept lawyering. He was looking at relatively sophisticated legal argument, and a, an understanding of what was required with an amended complaint. And with regard to the timing of the filing of the complaint, again, I, I can't, I can, I'm only a reader, so I, I don't know, I can only see, or, you know, read what Judge Bennett said. But it seemed to me that he thought that counsel were dragging the case out, and that if they didn't have really anything to add, why do it at the last minute? I, I, that struck me as the only right answer, not, not that there's anything wrong with filing on time. So, back to the, back to the process question I had. It's my understanding from your responses that, that it's your position that you complied with Rule 7 by putting the motion for sanctions in this footnote, and that was good enough. Is that your position? Yes. Okay, what about our case, it's a 2008 case, Cozzarelli, where we held the plaintiff's request for leave to amend only in a footnote in response to the defendant's motion to dismiss, and again, in the final sentence of their objections, did not qualify as a motion for leave to amend pursuant to Rule 7? I'm, I'm not remembering exactly the procedural posture of Cozzarelli as I'm standing here, but in, in reviewing all the cases, what I, the pattern that I generally found was that the courts of appeals recognized the broad discretion of the district courts intended to. Let me say this. It's clear there are cases where a district court says, you only put that argument in a footnote, I'm not going to consider it, and the court would then be within their discretion to say, I'm not going to consider it. What I'd say here is, we did include the argument in the footnote, we also included it in the order, and we talked at the beginning of our motion to dismiss about the vexatious nature of the failure to make any meaningful changes to the amended complaint. And then as a matter of fact, it, it wasn't missed. And I think possibly the key procedural fact is, well, first of all, we made the suggestion of Section 1927 sanctions. And Section 1927 sanctions are against the attorneys only. So Mr. Meadows was on notice that this was a request that he be sanctioned. And they could have said, under the local rule, we understand that responses are not required until ordered, but they didn't do that. They responded. And that's what Judge Bennett said. He said there was a response. They did say, although plaintiff and his counsel need not respond to an argument as opposed to a motion for sanctions, and then they responded. So they did say they're not required it. Well, that's sort of, kind of, kind of like waiving the waiver. They didn't put on their entire, sort of, what they would say if, if they had been given full process. Well, I, I could. Because it's in a footnote. I could respond very, I'm out of time, but I could respond very briefly on, on two points. Sure. So, so the, the first is, Mr. Meadows really, you know, has sort of spent, even today, on appeal. And by the way, he hired counsel to, to, to file a motion to reconsider. He never said there's something special that might violate the attorney-client, you know, relationship that I need to proffer under oath. I mean, the arguments have not been. I'm not sure when he would have said that. Well, he, he could have said it. That's the issue I'm having. And so I guess my, my basic answer to that is, is Mr. Meadows says that he did not have adequate process, but he, he had notice, and he didn't have surprise. And he did move to reconsider, and, and Judge Bennett did at the end of the order denying the motion to consider. He went back to the merits and said why these arguments were not sufficient. And then the final point which we make in our appellate brief is that there is a, a defect in the notice of appeal in which Mr. Biss did not, with objective clearness, include himself as an appellant. And I would just note something that even the clerks, even the docket sheet in this case lists the appellants as Colonel Harvey and, and Mr. Meadows. Can I ask you what you think follows from that? I mean, if we vacate, I assume, whether or not he appealed, we have jurisdiction, right? Because, you know, just like, if you've got more than one plaintiff and one of them has standing, that's enough to get the matter in front of the court. And so, if we vacate the order, the sanctions order, I assume he's still not going to have to pay because there's no order. And if we don't, he has to pay. So does it matter? Well, if a, if a sanctions order is entered, one must assume that the order is, was entered jointly and severally against the three entities. And if someone doesn't appeal an order, I, it's an interesting question as to whether if the order is vacated, is it vacated as to all three or just the two who appealed? Mr. Hentoff, if you know this, was the district court aware of the entire CNN article at the time of the first complaint? The entire, not just the pleadings, but the entire article? Yes, Chief Judge Gregory. We attached the entire article to the original motion to dismiss. All right. Now, here's my question then. It's, it's sort of a, somewhat of a counterfactual, but would we be in the same posture if instead the plaintiff said upon knowing that their complaint was going to be dismissed without prejudice, I would have to say. They said, and then offered the opportunity to amend and they said, nope, let it ride and appeal here. Would they be in the same situation in terms of sanctions there, you think? Totally different situation, Your Honor. And that's what, that's what we said. Nobody, nobody has to file an amended complaint. You've got every right to just saying, I'll take a dismissal with prejudice and I'll appeal. Now, the other side of that is this. I thought you might say that. Is this, I'm using a term that's normally not used, but you'll know what I mean by this, but is this almost somewhat like invited error in the sense that since the district court knew the entire article, giving them the opportunity to amend, well, what would be there to amend? I mean, they pretty much, I mean, the facts are the facts. And because that was the, if you will, the four corners basically of the alleged defamation and they had it, it's almost like saying, well, if you, why are you offering me the opportunity to amend if you see exactly what the four corners of it is? It's almost like saying, well, it must be something here. Maybe we didn't put this right here like we should have. We should have led here. We should have done that. You see what I'm saying? It's not really invited error because obviously that's used in a different kind of way. I know as a counselor, as all you are, you know, an experienced counselor, you know what I mean by that. And say, well, Judge, why are you offering it to me? I need to do something. You know, we're all A type people. You know, it must be something here I can do better. And, but in that sort of like where we are in civil sanctions. Well, Judge, I think any district judge has to pay attention to rule 15, which says leave to, you know, especially the first request to amend should be freely granted. And, you know, the complaint's an interesting thing because the plaintiff is the, you know, boss of the case. And what are the allegations? You know, what are the allegations that the plaintiff didn't include for any particular reason? So I don't think it was a trap or anything like that. No, no, not that. But I see. The point well taken. It was beyond the Four Corners perhaps because the Court wouldn't know that. Thank you, Your Honors. All right. Thank you, Mr. Hentoff. Mr. Lipper, you have some time reserved. Thank you. I want to address a couple of things that Mr. Hentoff said. So first, Mr. Hentoff suggests that at no time did Mr. Meadows indicate that there was confidential information that he might need to divulge. That is simply false. And I want to point you to two points in the Joint Appendix. First of all, Joint Appendix page 328, which is the supplemental motion to withdraw that Meadows filed a few days after the sanctions order. And he says, quote, Mr. Meadows would like to defend himself against the imposition of sanctions through his own separate counsel by moving for reconsideration, filing a separate brief, and presenting oral argument. But mounting a full and fair defense on his own behalf may require that Mr. Meadows take positions that are adverse to the interests of Plaintiff Harvey or Mr. Biss or that he divulge confidential information about the representation as he is permitted to do under Maryland Rule 19-301.6b5 and which he would seek to do via an in-camera submission. And yet he was never given that opportunity. And then second, on pages 361 and 362 of the Joint Appendix, in his reconsideration motion, he doesn't divulge the confidential information publicly for obvious reasons, but he does allude to some of the pressures that, you know, he was facing in deciding whether to veto the First Amendment complaint or not. But I want to pick up on a couple of other things that Mr. Hentoff said, because I think they show that if Mr. Meadows had acted in the way that Mr. Hentoff is suggesting he should have, he would have been breaching, Mr. Meadows would have been breaching his own ethical obligations to his clients. The first involves the discussion at the beginning of the argument between Judge Harris and Mr. Hentoff about the sequencing issue. And I think Judge Harris sort of suggested that the real harm here was that it made him look like a blabbermouth. And, in fact, that issue and the consequences of it was something that was added to the First Amended complaint. Because it — paragraph 5 of the First Amended complaint, and you can see the black line on Appendix page 138, said that the suggestion that Harvey had sort of, you know, threw his boss under the bus was, quote, highly prejudicial to plaintiff's employment. And then on page 158 of the appendix, paragraph 41e, that the disclosure, quote, hurt plaintiff's relationship with Nunes. Because far from suggesting that Nunes was going out of his way to comply with the letter of the law, it suggested that he was going out of his way to evade the spirit of the law. And as a staffer, that can be very damaging to your employment if your boss can't trust you. Had Meadows vetoed the filing of the First Amendment complaint, that additional detail, which prompted a colloquy about the merits of the First Amended complaint on appeal, would not have been there, and Meadows would have been deserving his client's interests. The second point I want to make goes to Mr. Hentoff's point about the actual malice issue. And it is very clear in the opposition to the motion to dismiss the First Amended complaint that the brief is preserving the argument for later appeals that the actual malice standard in New York time versus Sullivan. Obviously, the district court, or this court for that matter, cannot, you know, disregard New York time versus Sullivan. But that argument, if it is not made in the district court and then not made, you know, in the court of appeals, would be forfeited by the time it got to the Supreme Court. And so even if, you know, there are now two U.S. Supreme Court justices that have written separately to suggest Sullivan should be reconsidered, whether you or I agree with that, his client wanted to argue it. And if he had failed to, you know, preserve those arguments below, he would have been forfeited. He would have been undermining his client's appellate rights. And so, again, what the district court's order did and what CNN is suggesting Meadows should have done was to violate his duty of loyalty, violate his duty of zealous representation, violate his duty of confidentiality, you know, by vetoing the filing of a First Amended complaint, and then by divulging confidential information at the, you know, the first hint of a footnote suggesting sanctions. Neither is fair to Mr. Meadows or any other attorney. But even more importantly, neither would have served Mr. Meadows' client well, and neither would serve clients well in the future. If the Court has no questions. Thank you, Mr. Lippert. Mr. Hentoff, thank you for your argument, as well, for your arguments. We would love to come down and greet you in our normal fashion, but we very much appreciate your fine arguments and helping us on these very thorny issues. Thank you so much. We wish you well, and please be safe. With that, I'll ask the Deputy Clerk to adjourn the Court until this afternoon. This Honorable Court stands adjourned until this afternoon. God save the United States and this Honorable Court.
judges: Roger L. Gregory, Stephanie D. Thacker, Pamela A. Harris